United States District Court
Southern District of Texas
**ENTERED**
June 09, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| MONE P. KIMBLE, § § Plaintiff. § § V. § CIVIL ACTION NO. 3:22-cv-00272 § WELLS FARGO N.A., § § Defendant. § | |

## **MEMORANDUM AND RECOMMENDATION**

Pending before me is a Motion to Dismiss Plaintiff's Third Amended Petition filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). *See* Dkt. 25. I have converted the motion to dismiss into a motion for summary judgment. *See* Dkt. 34. For the reasons set forth, I recommend the motion for summary judgment be **GRANTED**.

## BACKGROUND

This case concerns federal agents' seizure of monies from a Wells Fargo safe deposit box and deposit accounts belonging to Plaintiff Mone P. Kimble ("Kimble"). The parties agree that at all times relevant to this lawsuit, Kimble leased a safe deposit box and held at least one deposit account at a Wells Fargo branch in Pearland, Texas. On February 17, 2011, federal agents investigating Kimble's husband seized the keys to Kimble's safe deposit box while executing a search warrant at the home that Kimble shared with her husband. Federal agents later seized cash from Kimble's safe deposit box and money from her deposit accounts. The exact amount of money seized from the safe deposit box is disputed. *Compare* Dkt. 32-1 at 2 (Kimble's Statement) ("Agents seized approximately $680,000.00 in cash from the safe deposit box and accounts."), *with* Dkt. 32-3 at 7 (Presentence Investigation Report) ("Agents subsequently seized a total of $463,900 in cash from inside the safety deposit box that was opened by the key

recovered at the defendant's residence . . ., and $15,684.39 from the Wells Fargo Bank Accounts held by the defendant's spouse."). Wells Fargo also disputes that any money was seized from a deposit account belonging to Kimble. *See* Dkt. 38 at 14. Nevertheless, the agents unquestionably seized *at least* $479,584.39 in monies belonging to Kimble.

When Kimble realized that her assets were missing, she spoke with Wells Fargo representatives, including Kelly Blanco, one of the branch managers, who told Kimble "that the government agents had a warrant to seize her assets." Dkt. 16 at 3. On February 17, 2015, Kimble filed suit against Wells Fargo in Texas state court, alleging that Wells Fargo "opened her safe deposit box and gave the contents of her box, namely cash in the amount of $650,000.00 to the government that did not present or obtain a warrant to open the safe deposit box." Dkt. 1 at 15. For whatever reason, Kimble did not serve Wells Fargo. The case remained dormant for years. In May 2020, Kimble learned for the first time through her husband's criminal defense attorney that the government did not have a warrant for Kimble or her assets. Finally, on June 29, 2022, Kimble served Wells Fargo. Wells Fargo removed this case to federal district court on the basis of diversity jurisdiction on July 21, 2022.

Kimble has amended her complaint several times since removal. The operative pleading is the Third Amended Petition (Dkt. 16), which alleges claims for (i) breach of express contract; (ii) breach of implied contract; (iii) negligence; (iv) bailment; and (v) breach of fiduciary duty. Wells Fargo moved to dismiss all claims. After reviewing the briefing and the record, I gave the parties notice of my intention to treat the motion to dismiss as one for summary judgment, and afforded the parties an opportunity to submit additional material. *See* Dkt. 34. Both sides have submitted additional briefing and exhibits. *See* Dkts. 37–39.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

R. CIV. P. 56(a). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017). The movant "bears the initial responsibility of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (quotation omitted). To defeat a motion for summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015).

## ANALYSIS

Wells Fargo argues that it should prevail on summary judgment because all of Kimble's claims are time-barred. I agree.

For purposes of the motion for summary judgment, I am treating as true Kimble's assertions that a Wells Fargo representative lied to her by telling her that federal agents had a warrant to seize *her* deposit accounts and *her* safe deposit box contents; that the agents did not actually have a warrant for Kimble or her assets;[4]

---

[4] Wells Fargo argues that the evidence shows that a warrant was obtained. *See* Dkt. 38 at 4. It is true that the safe deposit box keys were seized from Kimble's home pursuant to a warrant. But there is no evidence in the record to suggest that the scope of the warrant that purportedly authorized agents to seize the keys from the home that Kimble shared

and that Kimble learned only in May 2020 that Wells Fargo lied to her and that the agents seized her assets without a warrant. Even with all these assumptions in her favor, Kimble's claims are unquestionably time-barred.

A. **KIMBLE'S NEGLIGENCE AND BAILMENT CLAIMS ARE TIME-BARRED UNDER HER OWN DESIRED LIMITATIONS PERIOD**

At the outset, I note that Kimble's negligence and bailment claims are time-barred under her own theory of the case and desired limitations period. Negligence and bailment each have a two-year limitations period. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a). By Kimble's own admission, she knew by "May of 2020 . . . that the government took [her] money without a warrant." Dkt. 32-1 at 3. Two years from May 2020 is May 2022. But Kimble did not serve Wells Fargo until June 29, 2022. "When a plaintiff files a petition within the limitations period but does not serve the defendant until after the statutory period has expired, the date of service relates back to the date of filing if the plaintiff exercised diligence in effecting service." *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990). Kimble makes no attempt to explain why she waited until June 2022 to serve Wells Fargo in a case that had been on file for more than seven years. Her failure to explain the delay in serving Wells Fargo is "wholly inconsistent with due diligence and constitutes negligence as a matter of law." *Buie v. Couch*, 126 S.W.2d 565, 567 (Tex. App.—Waco 1939, writ ref'd) (reversing judgment due to unexplained one month delay between issuance and service of citation). So even if I assume, as Kimble would have me do, that "the statute of limitations didn't begin to run until May of 2020," Dkt. 29 at 1, her negligence and bailment claims are nonetheless barred because she did not serve Wells Fargo until after her desired two-year limitations period expired.

---

with her husband *also* covered the safe deposit box at the bank. At a minimum, there is a genuine dispute regarding whether Wells Fargo permitted agents to access a safe deposit box belonging only to Kimble without first requesting to see a warrant that covered property belonging to Kimble (as opposed to her husband).

4

**B.    KIMBLE'S BREACH OF CONTRACT, FRAUD, AND BREACH OF FIDUCIARY DUTY CLAIMS EXPIRED IN 2019 AT THE LATEST**

Kimble's breach of contract, fraud, and breach of fiduciary duty claims each have a four-year limitations period. *See* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4)–(5), (c); *id.* § 16.051 (residual limitations period is four years). Wells Fargo would like for me to find that all of Kimble's claims are barred by the two-year limitations period provided for in the safe deposit box lease agreement. Yet, Wells Fargo no longer has the executed lease agreement.[5] So I cannot be certain that Kimble agreed to a two-year limitations period. More importantly, the safe deposit box lease agreement that Wells Fargo references has no bearing on Kimble's claims as they relate to her deposit account.[6] I appreciate Wells Fargo's desire to preserve this argument for the record, but I need not look to external documents to resolve the limitations issue.

"In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). The limitations period begins to run once a plaintiff is "aware of facts as would cause an ordinary prudent man to investigate." *Kilgore Fed. Sav. & Loan Ass'n v. Donnelly*, 624 S.W.2d 933, 939 (Tex. App.—Tyler 1981,

---

[5] Wells Fargo claims to no longer have the signature page from Kimble's safe deposit box lease agreement because its records retention policy is only seven years, and Kimble waited more than 11 years to serve Wells Fargo with her claims.

[6] Wells Fargo attempts to negate Kimble's claims as they pertain to her deposit accounts by ostensibly providing proof that Kimble had "only [one] deposit account with Wells Fargo on or around February 17, 2011," and that "statements between January and March 2011 demonstrate that [Kimble] only held a few thousand dollars in that account during that time, and no withdrawal or other depletion of the account that would be attributable to a seizure by government authorities is reflected." Dkt. 38 at 14–15. Yet, the Presentence Investigation Report for Kimble's husband—a document on which both parties rely—states that "agents seized . . . $15,684.39 *from the Wells Fargo Bank Accounts held by the defendant's spouse*." Dkt. 32-3 at 7 (emphasis added). At a minimum, these two documents show a genuine dispute regarding the number of Kimble's deposit accounts at Wells Fargo and whether any monies were seized from any of those accounts.

writ ref'd n.r.e.). The "very limited exception" to these general principles is the discovery rule. *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). Under Texas law, the discovery rule will toll the applicable limitations period until the plaintiff discovers the nature of the alleged injury "if [the] injury is both (1) inherently undiscoverable and (2) objectively verifiable." *Gallier v. Woodbury Fin. Servs., Inc.*, 171 F. Supp. 3d 552, 564 (S.D. Tex. 2016) (cleaned up). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001). "This legal question is decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006).

Here, Kimble alleges two distinct injuries. The first injury—the basis of her breach of contract, negligence, and bailment claims—is that Wells Fargo allowed agents to seize her assets without a warrant. *See* Dkt. 16 at 5–8. The second injury—the basis of her fraud and breach of fiduciary duty claims—is that Wells Fargo lied to Kimble when it told her that the agents had a warrant to seize her assets. *See id.* at 9–11.

Focusing on the first injury, the Third Amended Petition is silent as to when Kimble first learned that her assets were missing. But given that Kimble first filed suit against Wells Fargo on February 17, 2015, she certainly knew her assets were missing by February 17, 2015 at the absolute latest.[7] *See* Dkt. 1 at 15.

---

[7] Kimble's sworn statement suggests that it took no more than a month or two for her to learn about the seizure after federal agents executed a search warrant in February 2011 at the home Kimble and her husband shared. *See* Dkt. 32-1 at 2 (stating that she learned about the seizure "because things started bouncing in my check account and I knew that I had enough money to cover it"). Even so, I am using the date that Kimble first filed suit against Wells Fargo (February 17, 2015) as the date that she was first on notice of the seizure of her assets. This is the most advantageous date for Kimble. Nonetheless, even if I assume that Kimble did not find out about the seizure itself until four years after the execution of the search warrants, her claims are *still* time-barred. I explain why below.

Turning to the second injury, Kimble claims she did not realize until May 2020 that Wells Fargo had lied to her when she was told that federal agents had a warrant to seize her assets. So, the key question becomes whether the warrant's existence—and thus, the veracity of Wells Fargo's representation that the agents had a warrant—was inherently undiscoverable. If the warrant's existence was inherently undiscoverable, the discovery rule would toll the limitations period until May 2020, the date Kimble first became aware of the alleged deception by Wells Fargo. If, on the other hand, the warrant's existence was discoverable, the limitations period began much, much earlier—at the very latest, the date Kimble filed this lawsuit in February 2015.

Kimble alleges that "agents of the U.S. Government" (Dkt. 16 at 3) or "Federal agents" (*id.* at 8) seized her assets. Federal agents are required to "give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property." FED. R. CRIM. P. 41(f)(1)(C); *see also* 18 U.S.C. § 981(b)(2) (providing that, with limited exceptions, civil asset forfeitures "shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure"). In other words, if the agents did have a warrant as Wells Fargo said they did, the warrant's existence—and thus, the truth of Wells Fargo's statement— was inherently discoverable simply *by asking to see the warrant*.

Only if Wells Fargo owed Kimble a fiduciary duty could these easily verifiable facts be presumed "inherently undiscoverable." But contrary to Kimble's assertions otherwise, Wells Fargo did *not* owe a fiduciary duty to Kimble as either a lessee of a safe deposit box or as a depositor. *See Wells Fargo Bank, N.A. v. Citizens Bank of Tex., N.A.*, 181 S.W.3d 790, 801 (Tex. App.—Waco 2005, pet. denied) ("The relationship between a bank and its customer does not usually create a fiduciary relationship."); *Mitchell Energy Corp. v. Samson Res. Co.*, 80 F.3d 976, 985 (5th Cir. 1996) ("Under Texas law neither a cotenancy nor a lessor/lessee

7

relationship imports a fiduciary relationship."); TEX. FIN. CODE ANN. § 59.103 ("In a safe deposit transaction the relationship of the safe deposit company and the renter is that of lessor and lessee and landlord and tenant.").[8] Because Wells Fargo did not owe Kimble a fiduciary duty, and because the warrant's existence and the truth of Wells Fargo's statement were inherently discoverable, the discovery rule does not apply.[9]

  Nor does fraudulent concealment apply to toll the limitations period. For fraudulent concealment—also known as equitable estoppel—to apply, Kimble must allege: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998). Kimble has certainly alleged the first, second, and third elements. But Kimble has not demonstrated that she relied on Wells Fargo's representations, nor has she alleged that she was without means of obtaining knowledge of whether the agents who seized her assets had a warrant and, in turn, whether Wells Fargo was lying to her. To the contrary, all Kimble had to do to obtain this knowledge was *ask to see the warrant*. It simply was not reasonable for Kimble to hear "Federal agents came with a warrant and seized your assets," and go, "Okay, well I guess there's nothing I can do about it," and then sit on it *for 11 years* until by happenstance she runs into someone who tells her that there was never a warrant.

  Kimble avers that if "Wells Fargo [had] been honest about what happened, I could have fought the government and got my money back." Dkt. 32-1 at 3. This

---

[8] It is axiomatic that lessors have no duty to exercise care as to property stored on leased premises. *See Marine Indem. Ins. Co. of Am. v. Lockwood Warehouse & Storage*, 115 F.3d 282, 286 (5th Cir. 1997) ("The lessor is . . . not 'responsible' for the property of the lessee."). For this reason, Kimble's negligence and bailment claims fail as a matter of law, insofar as they pertain to her safe deposit box.

[9] Because Wells Fargo does not owe Kimble a fiduciary duty as either her bank or as the lessor of her safe deposit box, her breach of fiduciary duty claim fails as a matter of law.

8

argument betrays Kimble's lack of justifiable reliance because Kimble would have had to fight the government to get her money back whether the agents had a warrant or not. Moreover, Kimble only had six years to file suit to get her money back.[10] *See* FED. R. CRIM. P. 41(g) ("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."); *United States v. Wright*, 361 F.3d 288, 290 (5th Cir. 2004) (holding that the catch-all six-year limitations period in 28 U.S.C. § 2401(a) applies to determining when a Rule 41(g) right of action accrues). So, if, as Kimble alleges, her husband "was not a signer or authorized user of the accounts or safe deposit box nor did the Defendant or government have any information or make any allegations that would link her husband's business interests to any of the seized assets," Dkt. 16 at 3, then she should have fought to have her assets returned, warrant or no warrant.

To the extent Kimble is arguing that Wells Fargo *advised* her that the government had a right to seize her money, and that she interpreted that statement to mean that any further investigation would be futile and there was nothing she could do, such reliance is unreasonable. Wells Fargo is not a law firm and, again, did not owe her a fiduciary duty. It is preposterous that Kimble would have relied on a bank for legal advice. As I understand Kimble's argument, she believes that

---

[10] Any law student who has taken Criminal Procedure (and every lawyer) ought to know that the mere existence of a warrant does not mean that a search and seizure was lawful. Courts often suppress evidence because warrants were unlawfully obtained, invalid, or the execution of the warrant exceeded its scope—to name just a few of the myriad ways that a search or seizure can be challenged. *See, e.g.*, *Steagald v. United States*, 451 U.S. 204, 213 (1981) (holding that an arrest warrant does not confer the authority to search for more than the person to be arrested); *Franks v. Delaware*, 438 U.S. 154, 156 (1978) (holding that where probable cause in issuing a warrant is based on false statements in the warrant affidavit, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit"); *Coolidge v. New Hampshire*, 403 U.S. 443, 450 (1971) (holding warrant invalid because it was not issued by a neutral and detached magistrate). Had the agents actually had a warrant, Kimble would have needed a copy in order to attack the warrant's issuance, scope, and/or execution.

her questioning of a Wells Fargo representative "a few days after the seizure" (Dkt. 29 at 5) was a diligent investigation, and that her investigation rightfully ceased when she relied on Wells Fargo's representation that the agents who seized her assets had a warrant for her and her assets. But an ordinary prudent person does not resign themselves to being out hundreds of thousands of dollars just because a bank manager tells them that federal agents had a warrant. An ordinary prudent person asks to see the warrant. An ordinary prudent person continues their investigation if said warrant is not produced. Kimble did not behave as an ordinary prudent person would behave.[11] Moreover, her injuries—whether the seizure itself or the lie by Wells Fargo—were entirely and easily discoverable. Thus, all of Kimble's claims are barred by her failure to reasonably act.

As noted above, Kimble knew she was injured by February 17, 2015, the date she filed suit against Wells Fargo. While the filing of a lawsuit generally tolls a limitation period, the date of service relates back to the date of filing only "if the plaintiff exercised diligence in effecting service." *Gant*, 786 S.W.2d at 260. Yet, *seven years, four months, and 12 days* elapsed before Kimble actually served Wells Fargo. Kimble does not even bother to address this extraordinary delay. All Kimble says is that she "never had it served." Dkt. 29 at 2. That is not good enough. Even if I generously assume that the limitations period did not start until February 17, 2015, it ran out on February 17, 2019, which is still *more than three years* before Kimble served Wells Fargo. "Texas courts have consistently held that due diligence was lacking as a matter of law based on unexplained lapses of shorter duration." *Gant*, 786 S.W.2d at 260 (collecting cases). Accordingly, Kimble's initial lawsuit started the limitations period, but it did not toll it because Kimble did not exercise

---

[11] Kimble's unjustifiable reliance also dooms her fraud claim as a matter of law. *See Comcast Corp. v. Houston Baseball Partners LLC*, 627 S.W.3d 398, 417 (Tex. App.—Houston [14th Dist.] 2021, pet. dism'd) (holding that "failure to [exercise ordinary care for the protection of one's own interests] is not excused by 'mere confidence in the honesty and integrity of the other party'" (quoting *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015))).

due diligence in serving Wells Fargo. Thus, Wells Fargo is entitled to summary judgment on all of Kimble's claims.

## CONCLUSION

For all of the reasons stated above, I recommend that Wells Fargo's Motion to Dismiss (Dkt. 25) be treated as one for summary judgment and be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 9th day of June 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE